**UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Cynthia Santiago, Administrator of the Estate of Kevante Washington, | : : : | No. 2:24-cv-05133 |
| Plaintiff, | : : | |
| v. | : : | |
| United States of America, | : : | |
| Defendant. | : | |

**<u>SECOND AMENDED COMPLAINT</u>**

Plaintiff Cynthia Santiago, Administrator of the Estate of Kevante

Washington ("Plaintiff"), by her undersigned attorney, files this Second Amended

Complaint against United States of America ("Defendant") and alleges as follows:

**INTRODUCTION**

1. This action arises from the death of Kevante Washington ("Mr. Washington"), age 31, who died on May 11, 2023, at the Federal Detention Center Philadelphia ("FDC Philadelphia") following a brutal assault by his cellmate and Defendant's failure to render timely medical aid in violation of mandatory operational protocols.

2. Mr. Washington's death was not the result of discretionary policy decisions, but rather operational failures by Defendant and its employees who violated

established emergency response procedures, delayed critical medical intervention for thirteen minutes while Mr. Washington lay dying, and failed to maintain readily available emergency equipment as required by institutional protocols.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over the Federal Tort Claims Act claim pursuant to 28 U.S.C. §§ 1346(b), 2671-2680.

4. Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2) because all events giving rise to this action occurred at FDC Philadelphia in this district.

5. Plaintiff timely submitted an administrative tort claim to the Bureau of Prisons on October 6, 2023, which was denied on April 3, 2024. This action is timely filed within six months of denial pursuant to 28 U.S.C. § 2401(b).

6. All administrative remedies have been exhausted pursuant to 28 C.F.R. § 543.30.

## PARTIES

7. Plaintiff is the mother of Mr. Washington and the duly appointed Administrator of his Estate, residing in Lehigh County, Pennsylvania.

8. Defendant is sued under the Federal Tort Claims Act for the negligent acts and omissions of its employees at FDC Philadelphia, a facility operated by the Federal Bureau of Prisons.

## STATEMENT OF FACTS

### A. The Assault and Initial Response

9. On May 10, 2023, at approximately 3:37 p.m., during routine Special Housing Unit rounds, Officer Hall, an employee of Defendant, observed inmate Robert Smith ("Inmate Smith") kneeling over Mr. Washington in cell 848, holding Mr. Washington face down on the bottom bunk.

10. Mr. Washington was already unconscious and non-responsive to verbal commands when employees of Defendant arrived, evidencing severe head trauma with visible bleeding from facial and scalp injuries.

11. Despite Mr. Washington's unconscious state and visible life-threatening injuries, employees of Defendant did not immediately begin emergency medical treatment or call 911.

12. Instead, at 3:38 p.m., Lieutenant Maynard, an employee of Defendant, first ordered other employees of Defendant to apply hand restraints to the unconscious Mr. Washington before any medical assessment or intervention.

**B. Critical Delays in Medical Response**

13. Between 3:38 p.m. and 3:39 p.m., employees of Defendant waited for additional staff rather than immediately extracting Mr. Washington or beginning life-saving measures.

14. At 3:39 p.m., employees of Defendant applied hand restraints to Mr. Washington, who remained unconscious and non-responsive.

15. Material Handler Josue Torres, an employee of Defendant, arrived at 3:39 p.m., but still no medical intervention was initiated.

16. At 3:40 p.m., employees of Defendant finally opened the cell door and removed Inmate Smith, but continued to prioritize security procedures over medical aid for the unconscious victim.

17. The Control Center of FDC Philadelphia announced a request for staff assistance in SHU at 3:39 p.m., but did not call 911 or request emergency medical services until approximately 3:52 p.m.—**fifteen minutes after discovering Mr. Washington**.

**C. Absence of Required Emergency Equipment**

18. No stretcher was immediately available in the Special Housing Unit as required by institutional emergency protocols. The stretcher did not arrive until 3:55 p.m.—**eighteen minutes after discovery**.

19. No AED (Automated External Defibrillator) was readily accessible in the Special Housing Unit. Staff had to wait for an AED to be retrieved from an unspecified location.

20. When the AED finally arrived and was applied, it failed to advise shock, and there is no record that it was properly maintained or tested according to manufacturer specifications.

## D. Failure to Provide Immediate Medical Care

21. Employees of Defendant did not begin CPR or any life-saving measures until approximately 3:55 p.m.—**thirteen minutes after discovering** Mr. Washington unconscious and bleeding.

22. Employees of Defendant only began CPR after Mr. Washington's breathing had slowed and his pulse could no longer be detected, rather than immediately upon discovering his unconscious state.

23. Despite Mr. Washington's critical injuries, including multiple facial fractures, scalp contusions, internal bleeding, and evidence of sexual assault, officers prioritized restraint protocols over emergency medical intervention.

24. Mr. Washington was not transported from the SHU until after 3:55 p.m., and emergency medical services did not arrive until 3:56 p.m.—nineteen minutes after discovery.

**E. Institutional Failures**

25. According to the facility's After-Action Report, the following operational failures contributed to Mr. Washington's death:

a. Cameras were not properly positioned in the Special Housing Unit to monitor cells;

b. Security rounds were not conducted according to established procedures—staff failed to observe each cell as required;

c. The 3:00 a.m. and 5:00 a.m. counts were not conducted properly according to Special Housing Unit post orders;

d. The stretcher that should have been staged in the elevator sallyport was not present;

e. Multiple staff members were not wearing required protective equipment during the emergency response;

f. Only one officer was assigned to the Special Housing Unit perimeter, creating inadequate staffing for emergency response.

g. Institutional failures not cited in the After-Action report include the fact that a call help button location in Mr. Washington's cell was non-operational and/or was

not responded to in a timely manner by Defendant.

h. In addition, Mr. Washington was brought back to the FDC Philadelphia from his assigned halfway house for a non-disciplinary reason without being afforded due process, and against Defendant's policies and procedures.

i. Furthermore, Inmate Smith had a documented history of violence, including a previous referral to the FBI for assault, which was not properly uploaded to the TRUINTEL system as required.

### F. Mr. Washington's Death

26. Mr. Washington died on May 11, 2023, at Thomas Jefferson University Hospital from complications of multiple injuries, including blunt impact injuries to the head and torso, compression injuries to the neck, and sexual assault trauma.

27. The medical examiner determined the cause of death was "complications of multiple injuries" and the manner was homicide, noting that the severity of injuries was exacerbated by the delay in medical treatment.

28. Mr. Washington was only 31 years old and left behind three minor children.

## COUNT I - FEDERAL TORT CLAIMS ACT

### <u>Negligence</u>

29. Plaintiff incorporates paragraphs 1-28 as if fully restated herein.

30. Under the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq., Defendant is liable for personal injury and death caused by the negligent or wrongful acts or omissions of its employees acting within the scope of their employment.

31. Pursuant to 18 U.S.C. § 4042, the Bureau of Prisons had a mandatory, non-discretionary duty to provide for the safekeeping, care, and subsistence of all federal prisoners, including providing necessary medical care.

32. Defendant and its employees' conduct in this case involved operational decisions implementing established policies, not the formulation of policy subject to the discretionary function exception.

33. Defendant and its employees breached their mandatory duties of care by:

a. **Failing to immediately call 911** upon discovering an unconscious, bleeding inmate—an operational requirement not subject to discretion;

b. **Restraining an unconscious victim** before providing medical assessment or aid—a violation of emergency response protocols;

c. **Delaying CPR for thirteen minutes** despite Mr. Washington being unconscious and non-responsive—an operational failure not protected by discretionary

immunity;

d. **Failing to maintain emergency equipment** (stretcher and AED) in designated locations as required by institutional protocols;

e. **Inadequately staffing** the Special Housing Unit with only one perimeter officer, preventing timely emergency response;

f. **Failing to conduct required security rounds** observing each cell, an operational requirement;

g. **Failing to properly position security cameras** to monitor the Special Housing Unit as required.

34. These operational failures were not matters of policy choice or planning decisions protected by the discretionary function exception, but rather negligent implementation of established emergency procedures.

**COUNT II - FEDERAL TORT CLAIMS ACT**

**<u>Wrongful Death and Survival Action</u>**

35. Plaintiff incorporates paragraphs 1-34 as if fully restated herein.

36. By reason of the death of Mr. Washington, his beneficiaries have in the past and will in the future continue to suffer great pecuniary loss,

including, but not limited to, loss of support, loss of aid, loss of services, loss of companionship, loss of consortium and comfort, loss of counseling, loss of guidance, and loss of income.

37. As a direct and proximate result of the foregoing, Mr. Washington's wrongful death beneficiaries incurred or have been caused to incur and pay large and various expenses for medical treatment, hospital care, and medicine rendered to decedent until the time of his death and to incur various funeral, burial, and estate and administration expenses for which Plaintiff is entitled to compensation.

38. As a direct and proximate result of these operational failures, Mr. Washington suffered severe injuries and death, including conscious pain and suffering, that could have been prevented with timely medical intervention.

39. As a direct and proximate result of Defendant's negligence, Mr. Washington suffered the damages set forth above.

40. Defendant is liable for compensatory damages including conscious pain and suffering, medical expenses, funeral expenses, and loss of life.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that this Court:

A. Enter judgment against Defendant on all counts and award compensatory damages in an amount to be determined at trial;

B. Award an amount that exceeds the amount requested when Plaintiff submitted its claim to Defendant due to intervening facts and/or newly discovered evidence that warrant a larger award, and were not reasonably discoverable at the time that the claim was submitted to Defendant;

C. Grant such other relief as the Court deems just and proper.

Respectfully Submitted,

**THE IGWE FIRM**

Emeka Igwe, Esq.
Emeka Igwe, Esq.
1500 John F. Kennedy Boulevard
Suite 1900
Philadelphia, PA 19102
Phone: 215-278-9898
Email: emeka@igwefirm.com

Attorney for Plaintiff

Date: November 4, 2025