IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CYNTHIA SANTIAGO, Administrator of** The Estate of Kevante Washington | : : : | CIVIL ACTION |
| Plaintiff, | : : | |
| v. | : : | NO. 24-5133 |
| **UNITED STATES OF AMERICA,** | : : | |
| Defendant. | : | |

**Perez, J.**                                                                                                                November 5, 2025

# MEMORANDUM

Plaintiff Cynthia Santiago, the administratrix of Kevante Washington's estate, sued Defendant the United States of America on September 25, 2024, for violations of the Federal Tort Claims Act ("FTCA"), based on the response by prison officials to a fatal inmate-on-inmate attack. ECF Nos. 1 & 2. On April 30, 2025, the parties entered a stipulation (the "Stipulation"), wherein they established a deadline for Plaintiff to file a second amended complaint and agreed that any amendment would be "limited to claims brought under the FTCA." *See* ECF Nos. 17 & 18 ¶ 9 ("Paragraph 9"). Plaintiff now asks this Court to vacate Paragraph 9 so that she can file a second amended complaint, a copy of which she attached to her Motion (the "SAC"), that would add claims against newly named individual correctional officers under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Pl.'s Mot. Vacate Para. 9, ECF No. 22 at 8. But Plaintiff has not established she will suffer manifest injustice if the Stipulation is not set aside because she cannot assert a viable *Bivens* claim under the facts presented by the SAC. Her Motion therefore is denied.

1

## I. Background

On May 10, 2023, Robert Smith, a prisoner at Federal Detention Center Philadelphia ("FDC Philadelphia"), attacked his cellmate, Kevante Washington. Plaintiff alleges correctional officers discovered the attack and did not timely or appropriately intervene, choosing to prioritize restraining the unconscious Mr. Washington over providing emergency medical intervention. On May 11, 2023, Mr. Washington died from his injuries as a result of the officers' failure to timely provide medical care.

On September 25, 2024, Plaintiff filed a complaint and an amended complaint against Defendant the United States, asserting claims under the FTCA. ECF Nos. 1 & 2. On January 2, 2025, the Court granted Defendant's unopposed motion to stay the action pending a criminal investigation into the assault. ECF No. 14. On March 11, 2025, Defendant provided 800 to 900 pages of written discovery to Plaintiff. ECF No. 22 ¶ 7; ECF No. 23 at 4. On March 19, Plaintiff's counsel was deployed with the Army National Guard to the Middle East for five months. ECF No. 22 ¶ 8. On April 12, 2025, while deployed, Plaintiff's counsel conveyed to Defense counsel that Plaintiff was considering adding a *Bivens* claim in a second amended complaint. *Id.* ¶ 9. On April 30, the parties entered the Stipulation, which extended the stay pending the completion of the criminal investigation. ECF No. 18. The Parties agreed to allow Plaintiff 60 days from the expiration of the stay to amend the complaint, and that any amendment would be "limited to claims brought under the FTCA." ECF No. 18 ¶ 9. The Court approved the Stipulation on May 30, 2025. ECF No. 18. On August 8, 2025, Plaintiff learned Defendant would not criminally prosecute Smith for Mr. Washington's death. ECF No. 22 ¶ 26. The stay expired on September 2, 2025. *See* ECF No. 18 ¶ 9.

Following a status conference after this case was reassigned to this Court, Plaintiff filed this Motion seeking to set aside Paragraph 9 so she could add a *Bivens* claim against the individual

2

FDC Philadelphia correctional officers who were present for the attack and failed to respond appropriately. ECF No. 22. On October 27, 2025, Defendant filed a Response in Opposition to Plaintiff's Motion. ECF No. 23. This Court ordered Plaintiff to file a Reply addressing Defendant's arguments relating to the viability of a *Bivens* claim under the facts presented in the SAC and the statute of limitations. ECF No. 24. Plaintiff did so on October 31, 2025. ECF No. 25. On November 3, 2025, this Court denied Plaintiff's motion. ECF No. 26. This memorandum opinion follows.

## II. Legal Standard

Generally, stipulations between parties are encouraged to promote judicial economy. *Waldorf v. Shuta*, 142 F.3d 601, 616 (3d Cir. 1998). "[V]alid stipulations entered into freely and fairly, and approved by the court, should not be lightly set aside." *Id.* (citation omitted). District courts have discretion, however, to free a party from a stipulation "in exceptional circumstances," where doing so would "prevent a manifest injustice." *Id.* at 617 (internal punctuation omitted). To evaluate "manifest injustice," courts consider such factors as: "(1) the effect of the stipulation on the party seeking to withdraw the stipulation; (2) the effect on the other parties to the litigation; (3) the occurrence of intervening events since the parties agreed to the stipulation; and (4) whether evidence contrary to the stipulation is substantial." *Id.* at 617–18 (citations omitted); *see also Lock-Horev v. K-Mart No. 7293*, No. 14-6603, 2015 WL 4886429, at *3 (E.D. Pa. Aug. 17, 2015).

## III. Discussion

As an initial matter, Plaintiff asserts, without citation to any legal authority, that Defendant lacks standing to object to the addition of a *Bivens* claim because any such claim would be brought, not against Defendant, but against individual officers, whom Defendant has not yet agreed to indemnify. As a party to the Stipulation, however, Defendant has standing to argue for its enforcement.

3

### A.  Effect of the Stipulation on Plaintiff

Plaintiff argues she will be prejudiced if this Court enforces the Stipulation because doing so would prevent her from pursuing a *Bivens* claim, which she contends is her only option for obtaining relief from the individuals responsible for Mr. Washington's death. But Plaintiff cannot demonstrate manifest injustice based on the inability to pursue a claim that is destined to fail. And here, Plaintiff has not stated a *Bivens* claim on the facts put forth in the SAC.

Absent the Stipulation, Plaintiff could be granted leave to amend to include an additional claim, unless amendment would be futile. *See* Fed. R. Civ. P. 15(a)(2) (leave to amend should be freely granted "when justice so requires"); *Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006) ("Among the factors that may justify denial of leave to amend are undue delay, bad faith, and futility."). Futility means the amended complaint would fail to state a claim upon which relief could be granted. *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000). Courts analyze futility under the Fed. R. Civ. P. 12(b)(6) standard, *id.*, which requires a complaint to contain sufficient factual matter, taken as true, to state a facially plausible claim, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the SAC must provide sufficient factual matter that, if true, would establish Plaintiff is entitled to relief under *Bivens*.

The Supreme Court has recognized a cognizable *Bivens* claim in three circumstances: (1) a Fourth Amendment claim for unreasonable search and seizure in a person's home, *Bivens*, 403 U.S. at 397; (2) a Fifth Amendment claim for sex-based discrimination, *Davis v. Passman*, 442 U.S. 228, 235, 248–49 (1979); and (3) an Eighth Amendment claim against prison officials for failure to treat an incarcerated person's asthma, leading to his death and constituting deliberate indifference to his medical needs, *Carlson v. Green*, 446 U.S. 14, 16, 23–25 (1980). A *Bivens* claim can only survive if it is "indistinguishable" from *Bivens*, *Davis*, or *Carlson*. *Fisher v. Hollingsworth*, 115 F.4th 197, 205 (3d Cir. 2024).

To determine the availability of a *Bivens* claim, courts employ a two-step test. First, courts ask whether the case creates a new context—*i.e.*, whether it is "different in a meaningful way"—from *Bivens*, *Davis*, and *Carlson*. *Muniz v. United States*, 149 F.4th 256, 261 (3d Cir. 2025). If there is no new context, a *Bivens* remedy is available. *Id.* Second, if the context is new, courts "ask whether there are 'special factors counselling hesitation' in extending *Bivens*." *Kalu v. Spaulding*, 113 F.4th 311, 326 (3d Cir. 2024) (quoting *Ziglar v. Abbasi*, 582 U.S. 120, 136 (2017)). At this step, if the Court finds even one reason to pause, or one reason to believe Congress is better suited to create a damages remedy than the judiciary, it must not extend *Bivens* to the context before it. *Id.*; *Fisher*, 115 F.4th at 205 (quoting *Egbert v. Boule*, 596 U.S. 482 (2022)) (explaining the two-step framework "largely reduces to just one question: 'whether there is *any* reason to think that Congress *might* be better equipped to create a damages remedy.'").

### 1. Plaintiff's Claims Would Extend *Bivens* to a New Context

In determining whether a claim presents a new context, courts consider *Abbasi*'s list of non-exhaustive factors, which include:

> the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Fisher*, 113 F.4th at 326 (quoting *Abbasi*, 582 U.S. at 139–40); *see also Muniz*, 149 F.4th at 262–64 (applying six factors to deliberate indifference claim relating to failure to provide adequate medical care to diabetic prisoner and finding existence of Bureau of Prisons ("BOP") administrative remedy procedure was special factor precluding *Bivens* remedy). *Carlson v. Green* provides the closest analogue to Plaintiff's Eighth Amendment deliberate indifference claims. Several factors render Plaintiff's claim meaningfully different from that in *Carlson*.

First, *Carlson* involved claims against the chief medical officer and treating medical practitioners at the prison. *See Muniz*, 149 F.4th at 262 (citing *Green v. Carlson*, 581 F.2d 669, 671 (7th Cir. 1978)). Here, Plaintiff would assert her claims against two federal correctional officers and the supervising officer.

Second, *Carlson* involved a different "mechanism of injury" and type of officer misconduct than Plaintiff's claims. *See Kalu*, 113 F.4th at 327, 337. In *Carlson*, prison medical practitioners failed to provide medical treatment for a chronic medical condition over an extended period of time, acted against doctors' advice, offered no competent medical attention while the plaintiff waited in the prison hospital for eight hours following an asthma attack, and administered medication that exacerbated the plaintiff's condition. 446 U.S. at 16 n.1; 581 F.2d at 671. The mechanism of injury is different here: Plaintiff was not suffering from a chronic medical condition that prison officials failed to treat over time. Rather, he suffered fatal injuries when his cellmate violently assaulted him. Plaintiff did not wait in the prison hospital for eight hours without treatment. Rather, the SAC's events took place over a period of around 20 minutes within and around Mr. Washington's cell. Additionally, *Carlson* involved no inmate-on-inmate violence nor did the facts implicate a situation requiring officers to weigh the need to restrain individuals involved in a violent attack against the need to provide medical attention. Here, Plaintiff's claims involve an inmate-on-inmate assault, which required officers to assess and respond to a situation where violence had just occurred. Though the officers did not timely provide medical attention, these circumstances do not mirror those in *Carlson*. Thus, the nature, location, and circumstances of the official action here would extend *Carlson* to a meaningfully different context. *See Kalu*, 113 F.4th at 327 (quoting *Abbasi*, 582 U.S. at 148) ("[E]ven a modest extension [of *Carlson*] is still an extension."). *Compare Ashley v. Bradley*, No. 3:23-CV-01594, 2025 WL 1689401, at *4 (M.D. Pa.

June 16, 2025) (characterizing claim relating to failure to timely treat injuries resulting from inmate-on-inmate violence as "failure to protect" claim and finding distinction between *Carlson*'s "alleged failure to treat an illness" and plaintiff's allegations of "failure to protect and respond to inmate-on-inmate violence"), *appeal filed*, No. 25-2341 (3d Cir. July 17, 2025), *with Muniz*, 149 F.4th at 262 (finding circumstances "sufficiently similar" to *Carlson* where inmate's injuries arose because prison officials did not provide proper medication, treatments, or accommodations to address diabetic condition and failure to provide such medications worsened pre-existing condition).

Third, Plaintiff's claims risk intruding upon the functioning of federal prison administration in ways not contemplated by *Carlson*. *Carlson* addressed inadequate prison medical care by medical providers in a situation not involving violence. By contrast, Plaintiff's concerns here involve prison procedure for determining how to balance the priorities of security (*i.e.*, restraint procedures) and emergency medical care. *See Kalu*, 113 F.4th at 328 (finding questions of staffing and discipline relating to prison guard's sexual assault of prisoner "would invite judicial intrusion into a different aspect of federal prison administration" than *Carlson* contemplated); *Sargeant v. Barfield*, 87 F.4th 358, 367 (7th Cir. 2023) (finding housing assignments are distinct from medical care and would intrude on functioning of federal prisons). This factor presents an additional reason for finding a new context.

To argue her claims do not arise in a new context, Plaintiff relies on *Shorter v. United States*, 12 F.4th 366 (3d Cir. 2021), and *Bistriani v. Levi*, 912 F.3d 79 (3d Cir. 2018). *See* ECF No. 25 at 7. This reliance is misguided. The Third Circuit has expressly recognized the abrogation of those opinions by *Egbert v. Boule*. *Fisher*, 115 F.4th at 204. Only *Bivens*, *Davis*, and *Carlson* establish contexts actionable under *Bivens*—lower courts may no longer rely on their previous

7

precedent. *Id.* at 204–05; *see also Kalu*, 113 F.4th at 329–30. Therefore, this Court must compare Plaintiff's claims to *Carlson* and must not rely on the *Bivens* claims previously recognized in *Shorter* and *Bistriani*. Because the facts here meaningfully differ from *Carlson*, the Court must conclude that Plaintiff's claims present a new context.

### 2. Special Factors Counsel Against Extending *Bivens* to Plaintiff's Claims

Because Plaintiff's claim presents a new context, the Court must consider whether any special factors "counsel hesitation in extending the *Bivens* remedy." *Kalu*, 113 F.4th at 332. Under the special factors analysis, "[a] court faces only one question: whether there is *any* rational reason (even one) to think that *Congress* is better suited to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Egbert*, 596 U.S. at 496 (quoting *Abbasi*, 582 U.S. at 136). Therefore, applying the "special factors" analysis, courts consider broadly whether "there is *any reason* to think that 'judicial intrusion' into a given field might be 'harmful' or 'inappropriate,' . . . or even if there is the '*potential*' for such consequences." *Id.* (first emphasis added) (citation omitted).

Where "Congress has provided alternative remedies for aggrieved parties in [the plaintiff's] position," a *Bivens* action may be foreclosed. *Id.* at 497. For example, the availability of administrative remedies through the BOP forecloses a *Bivens* action. *Muniz*, 149 F.4th at 264. The Third Circuit has explained that *Carlson* relief is only available in limited circumstances because the BOP administrative remedy program exists. *Id.* at 265. For example, an aggrieved inmate may recover under *Carlson* where prison officials "thwart inmates from taking advantage" of the BOP administrative remedy program. *Id.* at 265. The SAC does not allege such circumstances.

This Court notes, however, that this case is distinct from *Muniz* because *Muniz* was filed by the aggrieved inmate, who personally was able to take advantage of the BOP administrative remedy program—as opposed to the administratrix of the estate of a deceased inmate. Nonetheless,

8

*Muniz* is still persuasive. Although Mr. Washington could not personally pursue an administrative remedy through the BOP's grievance process, that fact alone does not mean his claim would not be barred based on the availability of such a remedy.

A *Bivens* alternative need not "afford rights to participation or appeal" because *Bivens* "is concerned solely with deterring the unconstitutional acts of individual officers." *Egbert*, 596 U.S. at 497–98. The proper consideration is "whether the Government has put in place safeguards to 'prevent' constitutional violations 'from recurring.'" *Id.* at 498 (alteration and citation omitted). Here, the government has established an administrative remedy procedure. Whether or not that would allow for the recovery of the same relief by Plaintiff is irrelevant. *Ashley*, 2025 WL 1689401, at *5. It is not for this Court to decide whether the administrative remedy provided by BOP is adequate—that determination is up to Congress. *Egbert*, 596 U.S. at 498. "So long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy." *Id.* The fact that the remedy exists as a safeguard to deter unconstitutional actions is sufficient to foreclose Plaintiff's claims. *Id.*

Furthermore, even if the BOP's administrative remedy procedure were unavailable, Plaintiff's claims still implicate the separation of powers—a second special factor that would counsel against allowing a *Bivens* remedy. Plaintiff asks this Court to allow a claim that would impose liability on prison officials who are reacting in the immediate aftermath of a violent assault between cellmates. This Court is not in a position to direct prison officials on how to prioritize physical safety from violence—*i.e.*, restraining an inmate immediately after a violent assault—over providing emergency medical care. Allowing this type of claim would have "systemwide" consequences for prison administration, effectively dictating how prison policies are written and

9

implemented in situations involving inmate-on-inmate assault and resulting injuries. The Third Circuit has cautioned against allowing claims that would create a "new category of prison litigation," particularly where it would place "a substantial burden . . . on government operations." *Fisher*, 115 F.4th at 208 (omission in original). Because Congress and the BOP are better equipped than the judiciary to decide prison policy governing responses to emergency situations, this special factor forecloses *Bivens* relief under these circumstances.

Plaintiff cannot establish she would be prejudiced by enforcement of the Stipulation, which would merely prevent her from filing a *Bivens* claim that cannot survive a motion to dismiss. Thus, she will suffer no manifest injustice, and the Court denies her Motion on these grounds. However, the Court will briefly address the remaining *Waldorf* factors.

### B.  Effect of the Stipulation on Defendant

Plaintiff argues Defendant would not be prejudiced if this Court grants her motion because the new *Bivens* claims would not be brought against Defendant but against newly named individual prison guards. Defendant, however, has an interest in enforcing the Stipulation that was negotiated and agreed upon by the parties. The Stipulation expressly states that "plaintiff shall have 60 days to file a second amended complaint, which will be limited to claims brought under the FTCA." ECF No. 18 ¶ 9. Defendant drafted Paragraph 9 after Plaintiff indicated she was considering filing a *Bivens* claim. ECF No. 22 ¶¶ 9–10; ECF No. 23 at 5. Upon receipt of the draft Stipulation, Plaintiff negotiated additional time to amend following the conclusion of the stay. ECF No. 23-3 at 2. Clearly, at the time she agreed to the Stipulation, Plaintiff was aware of the existence of her potential *Bivens* claims. She could have negotiated to preserve her right to add additional claims. She did not. Instead, she agreed to amend only with respect to the FTCA claims. *Id.* Because the parties negotiated and entered the Stipulation with full knowledge that a *Bivens* claim was being considered, granting the Motion would deprive Defendant of their negotiated bargain. *See*

10

*Allergan, Inc. v. Mankind Pharma Ltd.*, No. 23-272, 2024 WL 4213722, at *2 (D. Del. July 22, 2024) (denying motion to vacate stipulation where party was aware of possible theories in defense at time of stipulation but agreed not to pursue them).

### C. Intervening Events

Plaintiff asserts that the intervening event of Defendant's decision not to criminally prosecute Smith "greatly affects [her] approach" to this litigation. ECF No. 22 ¶¶ 24, 26. She argues that in the absence of criminal charges against Smith, her only recourse to hold individuals accountable is through a *Bivens* claim against the prison guards. While that may be true, this Court agrees with Defendant that whether or not Smith was ultimately prosecuted has no bearing on the viability of Plaintiff's *Bivens* claim or the availability of damages. *See* ECF No. 23 at 9. A criminal prosecution would not have resulted in a damages award, nor would it have held the individual prison guards accountable for their actions relating to Mr. Washington's death. Additionally, the decision not to criminally prosecute Smith did not suddenly establish a viable *Bivens* claim. Plaintiff had the evidence before her counsel's deployment and indicated she would pursue a *Bivens* claim before entering the Stipulation. Thus, no event changed the availability of *Bivens* relief after the Stipulation was entered.

### D. Substantial Evidence Contradicting Stipulation's Limitation

Plaintiff contends substantial evidence, which was produced just over a week before Plaintiff's counsel was deployed overseas, supports her proposed *Bivens* claims and reveals deliberate indifference. *See* ECF No. 22 ¶ 37; ECF No. 25 at 5. Even if there is a mountain of evidence showing the prison guards acted with deliberate indifference, as discussed above, the Court cannot extend a *Bivens* remedy in these circumstances without Congressional action.

11

**IV.     Conclusion**

Because Plaintiff cannot establish a viable *Bivens* claim based on the SAC's alleged facts, she will not suffer manifest injustice if Paragraph 9 is enforced. The Court therefore denies her Motion.